[Civ. No. 25491. First Dist., Div. Two. June 24, 1968.]

THE STATE OF CALIFORNIA, Petitioner, v. THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent; WILLEM DIRK RODENHUIS, a Minor, etc., Real Party in Interest.

Thomas C. Lynch, Attorney General, Leonard M. Sperry, Jr. and Robert L. Bergman, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

William A. Sullivan for Real Party in Interest.

TAYLOR, J.—This petition seeks a writ of prohibition restraining the trial court from proceeding to trial in a personal injury action after the court's denial of petitioner's motion for summary judgment.

The depositions in support of the motion for summary judgment disclosed the following uncontradicted facts: plaintiff, a two and one-half-year-old minor, had accompanied his mother and others to San Gregorio State Beach in San Mateo

County. After inspecting a particular area carefully, the group sat down two or three feet from a small sheltered alcove. Shortly thereafter, plaintiff wandered over and stood and then sat in the remains of a fire located in the alcove and was severely burned. The fire remains were in the white ash stage, blended with the white sand and the hot coals underneath were not apparent or obvious to plaintiff's mother or others who investigated the location.

A state supervisor of beaches, whose duty it was to see that the beaches were clean for public use, had inspected San Gregorio Beach the preceding week. He was aware that people had been burned a number of times by hot coals but had never asked the beach personnel to put out any coals discovered. There were no signs warning the public of hot embers. A state ranger had cleaned up the vicinity where the incident occurred the day before the accident and though he had seen remains of fires in the alcove, he saw no active fires nor felt any heat. He never extinguished fires because there was no convenient method of doing so. He admitted that a fire covered with sand could keep alive for days and would be a hazard to people walking on the beach. When inquiry was made, he advised people of the danger of covering fires with sand but there were no official directives requiring him to do so.

The principal issue is whether, under the rules governing the disposition of motions for summary judgments (*Coleman* v. *Fitzgerald*, 252 Cal.App.2d 58, 61 [60 Cal.Rptr. 173]), there was any substantial evidence in petitioner's supporting depositions from which it could be inferred that the state had the actual or constructive notice indicated in sections 835 and 835.2 of the Government Code as a prerequisite to the imposition of liability.

We first dispose of several of respondent's preliminary contentions relating to the propriety of this petition. ■ It is well established that the defense of sovereign immunity presents a jurisdictional question properly raised by prohibition (*People* v. *Superior Court*, 29 Cal.2d 754 [178 P.2d 1, 40 A.L.R.2d 919]). ■ Furthermore, there is no appeal from a denial of summary judgment (*Bricklayers & Masons Union No. 1* v. *Superior Court*, 216 Cal.App.2d 578, 582 [31 Cal. Rptr. 115]), and thus, the petition here may also be justified on the ground that "there is not a plain, speedy, and adequate remedy in the ordinary course of law" (Code Civ. Proc., § 1103; *Harden* v. *Superior Court*, 44 Cal.2d 630, 634 [284 P.2d 9]; 3 Witkin, Cal. Procedure, § 36, p. 2510).

■ Although the state did not file its petition herein until four months after denial of its motion for summary judgment, there is no statutory time limit on the application for writs and no prejudice resulting from the delay has been shown. Respondent's contention of laches is, therefore, without merit (*Wilke* v. *Coinway*, 257 Cal.App.2d 126, 140 [64 Cal.Rptr. 845]).

■ We now turn to the principal issue of whether respondent's case presents an exception to the defense of sovereign immunity. Section 815 of the Government Code provides that except as otherwise specified by statute, a public entity is immune from liability. Section 835 does permit liability under certain specified conditions.[1] However, section 835, subdivision (a), does not apply here as there is no evidence in the depositions that the dangerous condition was created *by a negligent act or omission of a state employee.* Thus, before the state can be subjected to liability, it must be shown that its employees had either actual or constructive notice of the dangerous condition in sufficient time to effectuate a remedy as prescribed in section 835, subdivision (b).

Both active and constructive notice are more particularly described in section 835.2.[2] To establish "actual notice," it is not enough to show that the state employees had a general knowledge that people do leave hot coals on public beaches. There must be some evidence that the employees had knowledge of the particular dangerous condition in question

[1] "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

"(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

[2] "(a) A public entity had actual notice of a dangerous condition within the meaning of subdivision (b) of Section 835 if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character.

"(b) A public entity had constructive notice of a dangerous condition within the meaning of subdivision (b) of Section 835 only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character. On the issue of due care, admissible evidence includes but is not limited to evidence as to:

"(1) Whether the existence of the condition and its dangerous char-

(*George* v. *City of Los Angeles,* 51 Cal.App.2d 311, 315 [124 P.2d 872] ; *Kotronakis* v. *City & County of San Francisco,* 192 Cal.App.2d 624, 630 [13 Cal.Rptr. 709]). No such showing has been made and we hold, as a matter of law, that the state did not have actual notice as defined in section 835.2, subdivision (a).

We turn to a consideration of the elements of ''constructive notice.'' Briefly stated, constructive notice may be imputed if it can be shown that an *obvious* danger existed for an adequate period of time before the accident to have permitted the state employees, in the exercise of due care, to discover and remedy the situation had they been operating under a reasonable plan of inspection. In the instant case, it can be validly argued that there was a triable issue on the question of inspection, but in determining whether there is constructive notice, the method of inspection has been held to be secondary. The primary and indispensable element of constructive notice is a showing that the *obvious condition existed a sufficient period of time before the accident.* (*Strongman* v. *County of Kern,* 255 Cal.App.2d 308 [62 Cal.Rptr. 908]). Here, there was no evidence (direct or circumstantial) that the danger was obvious nor that the situation had existed for any particular length of time before the accident. Thus, we hold, *as a matter of law,* that the requirements of constructive notice, as defined in 835.2, subdivision (b), were not met.

The case of *Kotronakis* v. *City & County of San Francisco, supra,* is on all fours with the instant case. There, the plaintiff brought suit against the city for injuries sustained by him when he slipped on a puddle of vomit on a sidewalk near where he was attempting to board a bus. The incident occurred on Monday morning. The court noted that it was apparent that puddles of vomit were frequent occurrences, both in this area and in the general vicinity, but there was no evidence that the particular vomit on which the plaintiff had slipped had been there longer than overnight.

---

acter would have been discovered by an inspection system that was reasonably adequate (considering the practicability and cost of inspection weighed against the likelihood and magnitude of the potential danger to which failure to inspect would give rise) to inform the public entity whether the property was safe for the use or uses for which the public entity used or intended others to use the public property and for uses that the public entity actually knew others were making of the public property or adjacent property.

''(2) Whether the public entity maintained and operated such an inspection system with due care and did not discover the condition.''

Holding that the facts of the case presented no substantial evidence on which a verdict for plaintiff could properly be sustained and reversing a judgment for plaintiff, the court stated at page 630: "Where there is no evidence of actual notice, the city is charged with constructive notice if the defects have existed for such length of time and are of such conspicuous character that a reasonable inspection would have disclosed them. [Citation.]

*"While both the notoriety of the condition* [*citation*] *and the length of time it must have existed* [*citation*] *are normally questions of fact which are to be resolved by the jury, if the evidence as to either of these elements is insufficient as a matter of law the jury's verdict cannot stand.* [*Citations.*]

"We think that it would be carrying the doctrine of constructive notice too far to attribute to *the city notice of the presence of the vomit on which plaintiff slipped.* As a practical matter, if we were to do so, the city would have to have inspectors circulating throughout the area, day and night, and particularly on Sunday nights, to discover and remove such material from the sidewalks. In our opinion, to state this proposition is to refute it." (Italics partially added.)

It is ordered that a peremptory writ of prohibition issue prohibiting and restraining respondent court from proceeding with the trial of this case.

Shoemaker, P. J., and Agee, J., concurred.

A petition for a rehearing was denied July 24, 1968, and the petition of the real party in interest for a hearing by the Supreme Court was denied August 21, 1968.