Filed 6/26/26  Jimenez v. City of San Marcos CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MARIA GUADALUPE JIMENEZ, | D085828 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2023-00002355-CU-PO-NC) |
| CITY OF SAN MARCOS, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Affirmed.

Khashayar Law Group, Daryoosh Khashayar and Angela Ness for Plaintiff and Appellant.

Dean Gazzo Roistacher, Lee H. Roistacher, and Mitchell D. Dean for Defendant and Respondent.


Maria Gudalupe Jimenez appeals the summary judgment in her action against the City of San Marcos (the City) for personal injuries caused by a dangerous condition of City property.  She contends she raised a triable issue of fact as to whether the City had constructive notice of the protruding metal

base of a missing street sign that caused her to trip and fall on a public sidewalk. We reject her contention and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Jimenez was walking on a public sidewalk in the City on March 6, 2022, when she tripped over the metal base of a bike lane sign that had been knocked over. She fell to the ground, fractured her left wrist, and sustained other injuries.

After the City rejected the claim Jimenez submitted under the Government Claims Act (Gov. Code, § 810 et seq.; subsequent undesignated section references are to this code), she sued the City for damages in the trial court. The parties stipulated that the sole cause of action was for a dangerous condition of public property under section 835.

The City moved for summary judgment (Code Civ. Proc., § 437c) on the ground it neither created nor had actual or constructive notice of the alleged dangerous condition. The City supported the motion with photographs of the scene where Jimenez tripped and fell and related deposition testimony and with declarations from two employees (Juventino Saavedra and Raul Quezada) familiar with the City's systems for inspecting sidewalks and street signs.

The photographs, which were taken by Jimenez's daughter Tania Gaitan on March 6, 2022, showed the metal base of the downed bike lane sign was located about a foot from the curb and protruded a few inches above the surface of the sidewalk. The sign itself lay beside a damaged chain link fence that bordered the edge of the sidewalk opposite the curb.

The City employees' declarations established the following facts. The City divides its sidewalks into five inspection sectors, and its contractor inspects one sector per year, so that each sidewalk is inspected once every

five years. When Jimenez tripped and fell, the sidewalk on which she fell had last been inspected in May 2017, and the damaged street sign was not then noted. Beyond its inspections of the sidewalks, the City inspects street signs at least once a month by having an assigned employee drive around the City looking for downed or damaged signs. The City uses the same five sectors it uses for sidewalk inspections, and the employee drives through every sector once a month, looking for downed signs. The assigned employee does not document completion of inspection of a specific area or street; the employee documents only signs "with issues in need of addressing." The downed bike lane sign where Jimenez fell was not noted in the City's February 2022 inspection. The City first learned of the downed sign on March 7, 2022, when the assigned employee noticed it. The City repaired it the same day. The City maintains a telephone number, e-mail address, and mobile application by which members of the public may report damaged sidewalks or street signs and request repairs. The City had no record of complaints or repair requests regarding the damaged bike lane sign where Jimenez fell.

Jimenez opposed the summary judgment motion. She conceded the City did not cause the alleged dangerous condition and had no actual notice of it, but argued a reasonable jury could find the City had constructive notice of the condition based on its duration and obviousness. Jimenez submitted a declaration in which she described her trip and fall and related injuries. She stated the area where she tripped and fell "is a busy thoroughfare with heavy vehicle and pedestrian traffic daily." Gaitan submitted a declaration in which she stated that before Jimenez tripped and fell, Gaitan went by the location of the incident at least three or four times per week and noticed the bike lane sign had been missing for at least two or three weeks. Jimenez also

3

submitted excerpts of the transcript of Quezada's deposition. Quezada testified the City did not "have a specific inspection program for signs. . . . [W]e call our 'inspections,' where we drive around the [C]ity . . . per sectors. And we drive and inspect the areas, but there's no specific inspection sign program." Quezada confirmed that every sector is inspected monthly for missing or damaged signs, even though no records of completion of those inspections are kept. He also confirmed that the damaged bike lane sign was repaired when it was discovered in March 2022.

In reply, the City argued the evidence the bike lane sign was missing for at least two or three weeks before Jimenez tripped and fell over the metal base of the sign was insufficient to establish that the base was such an obvious dangerous condition that the City should have discovered it in the exercise of due care.

The trial court held a hearing and granted the City's motion for summary judgment. It ruled Jimenez failed to raise a triable issue of fact as to the obviousness of the alleged dangerous condition. The court entered judgment for the City.

## DISCUSSION

Jimenez contends the trial court erred by granting the City's motion for summary judgment because she raised triable issues of fact as to the City's constructive notice of the dangerous condition[1] that caused her injuries. Based on the photographs the City submitted, she argues a jury reasonably could find the danger presented by the metal base of the missing bike lane sign was obvious. Based on the evidence the sign was missing for at least two or three weeks before Jimenez tripped over it, she argues a reasonable jury

---

[1] Jimenez does not contend the City had actual notice of the condition.

could find the dangerous condition existed long enough for the City to have discovered it had the City adopted and executed a reasonable inspection system. She asks us to reverse the summary judgment.

A defendant's motion for summary judgment is properly granted if the defendant submits evidence that the plaintiff cannot establish an essential element of her claim and she fails to submit evidence that would permit a reasonable trier of fact to find in her favor on that element. (Code Civ. Proc., § 437c, subds. (a), (c), (p)(2); *Maksimow v. City of South Lake Tahoe* (2024) 106 Cal.App.5th 514, 521 (*Maksimow*).) We review the ruling on the motion de novo, considering the evidence in the light most favorable to the plaintiff and drawing all rational inferences in her favor. (*Maksimow*, at pp. 521–522.)

The only cause of action at issue on the City's summary judgment motion was one for dangerous condition of public property under section 835. As applicable to this case, the statute would subject the City to liability if a dangerous condition on its property proximately caused Jimenez to sustain an injury of a kind reasonably foreseeable from the condition and the City had constructive notice of the condition long enough before the injury to have taken measures to protect against the danger. (*Id.*, subd. (b); *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 68.)

Pursuant to section 835.2, subdivision (b), to establish constructive notice, Jimenez must show "the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character. On the issue of due care, admissible evidence includes but is not limited to evidence as to: [¶] (1) Whether the existence of the condition and its dangerous character would have been discovered by an inspection system

5

that was reasonably adequate (considering the practicability and cost of inspection weighed against the likelihood and magnitude of the potential danger to which failure to inspect would give rise) to inform the public entity whether the property was safe for the use or uses for which the public entity used or intended others to use the public property and for uses that the public entity actually knew others were making of the public property or adjacent property.  [¶] (2) Whether the public entity maintained and operated such an inspection system with due care and did not discover the condition." Stated more simply, " 'constructive notice may be imputed if it can be shown that an *obvious* danger existed for an adequate period of time before the accident to have permitted the [City] employees, in the exercise of due care, to discover and remedy the situation had they been operating under a reasonable plan of inspection.' " (*Maksimow, supra*, 106 Cal.App.5th at p. 526.)

Jimenez failed to raise a triable issue of fact as to whether the sidewalk on which she tripped and fell was in an obviously dangerous condition long enough for City employees to discover it in the exercise of due care.  The City submitted evidence that it inspected each sidewalk once every five years and each street sign once every month, that the metal base of the missing bike lane sign was not discovered during the most recent sidewalk inspection and monthly street sign inspection before Jimenez tripped and fell over the metal base, and that the missing sign was discovered and repaired by a City employee the day after the accident.  The City also submitted evidence that it maintains a telephone number, e-mail address, and mobile application for members of the public to report damaged sidewalks or street signs and to request repairs and that it had no record of complaints or repair requests for the damaged bike lane sign where Jimenez fell.  This evidence satisfied the

6

City's burden on the motion for summary judgment and shifted the burden to Jimenez to submit evidence that the City failed to act with due care because its inspection- and complaint-based system was not reasonably adequate and had the City used a reasonably adequate system it would have discovered the dangerous condition. (Gov. Code, § 835.2, subd. (b); Code Civ. Proc., § 437c, subd. (p)(2); *Maksimow, supra*, 106 Cal.App.5th at p. 521; see *Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 243 [city showed it acted reasonably by setting forth its policies for dealing with dangerous condition and submitting evidence employees complied with policies]; *Strongman v. County of Kern* (1967) 255 Cal.App.2d 308, 313 [adequacy of county's inspection system is issue for jury when plaintiff presents "considerable evidence concerning the adequacy" that is "open to more than one interpretation"].)

Jimenez, however, submitted no evidence that the City's inspection system was not reasonably adequate. She cites Quezada's testimony that the City "do[es]n't have a specific inspection program for signs" but ignores his testimony that "[e]very sector gets inspected monthly" and that the downed sign was discovered and repaired by the City employee assigned to do the monthly inspections the day after she tripped over the metal base and fell. Jimenez criticizes the City for failing to have a more formal procedure for inspecting street signs and for failing to keep records of when inspections were done, and complains the five-year period between sidewalk inspections was "inadequate to ensure [the] safety of the City's busy sidewalks for its pedestrians." But she does not explain why the monthly sector inspections were inadequate, particularly in light of the fact that the City employee assigned to do the inspections located and repaired the downed sign within two or three weeks from her daughter's estimate of when the sign was

7

downed.  Although the City "must exercise vigilance in keeping its streets [and sidewalks] safe and is bound to make reasonable inspections to that end" (*Peters v. City & County of San Francisco* (1953) 41 Cal.2d 419, 427–428), Jimenez has not cited and we have not found any legal authority requiring the City to adopt specific formal inspection procedures, to keep records, or to conduct inspections with a particular frequency.  She simply asserts that with more frequent inspections and formal procedures, the metal sign base over which she tripped and fell "would have been discovered on this very busy street."  But "triable issues of fact can only be created by conflicting evidence, not speculation or conjecture." (*Lattimore v. Dickey* (2015) 239 Cal.App.4th 959, 967.)  Jimenez's "guesswork falls short of raising a triable issue of material fact." (*Maksimow, supra*, 106 Cal.App.5th at p. 528.)

We conclude Jimenez has not raised a triable issue of fact as to whether the City's system for inspecting its sidewalks and street signs for dangerous conditions was reasonably adequate and satisfied its duty to exercise due care to discover and repair such conditions.  We therefore need not address the parties' arguments about whether the metal base of the downed bike lane sign was an obvious danger that existed for a sufficient period of time before she tripped and fell over it.

## DISPOSITION

The judgment is affirmed. The City is entitled to costs on appeal.


KELETY, J.

I CONCUR:


DATO, J.


I CONCUR IN THE RESULT:

I concur in the result based upon *Heskel v. City of San Diego* (2014) 227 Cal.App.4th 313.


O'ROURKE, Acting P. J.

9